UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JESSICA DEL CASTILLO,<br><br>      Plaintiff,<br><br>    v.<br><br>JOHN PHELAN, Secretary of the Navy,<br><br>      Defendant. | Civil Action No. 25-1876 (CRC) |

**COMBINED OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, CROSS-MOTION FOR SUMMARY JUDGMENT AND <u>MEMORANDUM IN SUPPORT THEREOF</u>**

**TABLE OF CONTENTS**

Table of Contents..............................................................................................................i

Table of Authorities ..........................................................................................................ii

introduction ....................................................................................................................... 1

Background ........................................................................................................................ 2

    I.    Plaintiff's Service, Misconduct, and Board of Inquiry ............................ 2

    II.    Plaintiff's BCNR Application and the BCNR's Decision ...................... 6

    III.    Procedural History ................................................................................. 8

Legal Standards ................................................................................................................ 9

    I.    Summary Judgment ............................................................................... 9

    II.    Increased Deference When Reviewing Decisions of Correction Boards ............. 10

Argument ........................................................................................................................ 11

    I.    The BCNR Fully Explained Its Finding of No Error or Injustice and Provided a Rationale Connection Between the Facts and Its Decisions ................................. 11

    II.    Plaintiff Has Not Demonstrated That the BNCR Was Arbitrary or Capricious in Its Decision to Deny Plaintiff's Application .......................................... 16

        A.    The BNCR Did Not Ignore Evidence That The Text Messages Might Have Been Fabricated ................................................................ 16

        B.    The BNCR Did Not Fail To Address Evidence Demonstrating That The Recorder's Actions May Have Undermined the Board of Inquiry Proceedings .......................................................................... 17

    III.    Plaintiff's Argument Regarding "Ambush Discovery" Is Misplaced .................. 20

Conclusion ...................................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Atl. Sea Island Grp. LLC v. Connaughton*,
592 F. Supp. 2d 1 (D.D.C. 2008) ...................................................................................... 9

*Cone v. Caldera*
223 F.3d 789 (D.C. Cir. 2000) ........................................................................................ 11

*Dickson v. Sec'y of Def.*,
68 F.3d 1396 (D.C. Cir. 1995) ........................................................................................ 10

*Escobedo v. Green*,
602 F. Supp. 2d 244 (D.D.C 2009) ...................................................................... 10, 11, 15

*Hardy v. McHugh*,
692 F. Supp. 2d 76 (D.D.C. 2010) .................................................................................. 10

*James Madison Ltd. v. Ludwig*,
82 F.3d 1085 (D.C. Cir. 1996) .......................................................................................... 9

*Kreis v. Sec'y of Air Force*,
406 F.3d 684 (D.C. Cir. 2005) .................................................................................... 11, 15

*MD Pharm., Inc. v. DEA*,
133 F.3d 8 (D.C. Cir. 1998) ............................................................................................ 10

*Roberts v. United States*,
883 F. Supp. 2d 56 (D.D.C. 2012) .............................................................................. 11, 15

*Se. Conf. v. Vilsack*,
684 F. Supp. 2d 135 (D.D.C. 2010) ................................................................................... 9

*Sierra Club v. Mainella*,
459 F. Supp. 2d 76 (D.D.C. 2006) ..................................................................................... 9

*Cone v. Caldera*
223 F.3d 789 (D.C. Cir. 2000) ........................................................................................ 11

*Tourus Records, Inc. v. Drug Enforcement Admin.*,
259 F.3d 731 (D.C. Cir. 2001) ........................................................................................ 10

**Statutes and Regulations**

5 U.S.C. § 701 ................................................................................................................. 1, 2

5 U.S.C. § 706 ................................................................................................................... 10

10 U.S.C. § 1552 ............................................................................................................... 10

32 C.F.R. § 723.2 ......................................................................................................... 11, 15

32 C.F.R. § 723.3 ........................................................................................... 11, 12, 13, 14, 15

Defendant, the Secretary of the Navy ("Defendant" or "Navy"), through undersigned counsel, respectfully opposes the motion for summary judgment filed by Plaintiff, Jessica Del Castillo ("Plaintiff"), and cross-moves for summary judgment in this case brought pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*  This case presents a classic example of a plaintiff asking this Court to substitute its judgment for that of an agency due to Del Castillo's discontent with the Navy's actions, but that is not the APA's intended purpose. Because the Navy's actions have not been arbitrary, capricious, contrary to law, or unsupported by substantial evidence, Del Castillo's claims should be denied, and judgment should be entered in favor of Defendant.

## INTRODUCTION

Plaintiff is an active-duty Officer in the United States Marine Corps.  She was subject to a joint Board of Inquiry ("BOI") with another Marine Officer in December 2017 for substandard performance of duty, misconduct, and/or moral or professional dereliction predicated upon an adulterous affair with the other Officer. By a majority vote, the Board of Inquiry substantiated misconduct, but recommended that Plaintiff be retained in the Marine Corps. The Board of Inquiry's findings were endorsed by multiple General Officers, with adverse material relating to Plaintiff's misconduct being placed in Plaintiff's military record, and the matter was closed with Plaintiff continuing to serve in the Marine Corps.

Plaintiff petitioned the Board for Correction of Naval Records ("BCNR") in May 2020, requesting removal of: a failure to select for promotion; two adverse fitness reports; and, all other records of adverse personnel action taken after her joint Board of Inquiry held in December of 2017.  BCNR considered Plaintiff's application, obtained two advisory opinions, addressed all matters raised, and issued a formal denial of her petition in March of 2021.

In June of 2025, Plaintiff filed her Complaint. *See* ECF No. 1 ("Compl."). Plaintiff challenges the Board's March 22, 2021, denial of her application, alleging the decision was arbitrary, capricious, an abuse of discretion, and contrary to law in violation of the APA. *Id.* ¶¶ 1-5, 39–42. Plaintiff seeks to have this Court hold unlawful and set aside BCNR's decision, enter judgment in her favor, remand the matter to BCNR, award costs and attorney fees, and award other relief as appropriate. *Id.* (Prayer for Relief).

The record demonstrates that the Board's decision was supported by the evidence in the record and was not arbitrary, capricious, or otherwise contrary to law. Accordingly, Defendant respectfully asks this Court to grant summary judgment in Defendant's favor.

## BACKGROUND

### I.    Plaintiff's Service, Misconduct, and Board of Inquiry

Plaintiff enlisted in the Marine Corps in June of 2005, commissioning through the Marine Enlisted College Education Program, and obtaining designation as a Naval aviator in 2014. AR 0998-1001, 1563.

In March of 2017, the wife of Captain Burnett (another active-duty Marine Officer) contacted Plaintiff's husband, indicating that her husband was having an affair with Plaintiff, and that she had proof of the affair, leading him to meet her at a Dunkin' Donuts. AR 0234. Plaintiff's husband then relayed the allegations of adultery to the unit's Family Readiness Officer, who in turn reported the allegations to the Commanding Officer. AR 0260. Similar in time, Plaintiff's husband reported the allegations of adultery to the Group Duty Officer of Marine Aircraft Group-26. AR 260. On March 16, 2017, Plaintiff's Commanding Officer directed a Preliminary Inquiry into the circumstances of suspected adultery between Plaintiff and Captain Burnett. AR 1412. The Commanding Officer issued a military protective order to prevent communication between the Captains and contacted the spouses to inform them of the investigation. AR 0260. During a call

with Plaintiff's spouse, the spouse informed the Commanding Officer that Plaintiff admitted to the affair, that Plaintiff had admitted the affair to her father and that the spouse had spoken to the father, and that Plaintiff had relayed the possibility of the affair to her sister. AR 0261-0262. At the conclusion of the preliminary inquiry, a Command Investigation was initiated by the Commanding General of the Second Marine Aircraft Wing. AR 0266, 276, 572.

Based on the findings of the investigation, Plaintiff was offered nonjudicial punishment in June of 2017 for an adulterous affair with Captain Burnett from May 2015 through June 2016, with her refusing nonjudicial punishment on June 14, 2017. AR 1401-1405.   On June 21, 2017, the Second Marine Aircraft Wing Commanding General administered an adverse counseling to Plaintiff for the adulterous relationship prejudicial to good order and discipline resulting in her being removed from the Twenty-Fourth Marine Expeditionary Unit. AR 1406. Plaintiff responded to the counseling, denying the adulterous relationship. AR 1407.

On July 25, 2017, the Commanding General of the Second Marine Aircraft Wing issued a Report of Misconduct in the case of Plaintiff, outlining the circumstances giving rise to the Report, recommending that she be subject to a Board of Inquiry, and stating that her "behavior was prejudicial to good order and discipline and was a departure from the standards expected of a Marine Corps officer. AR 1408-1409.  Plaintiff acknowledged receipt of the Report of Misconduct on August 7, 2017, explicitly acknowledging that the Deputy Commandant, Manpower and Reserve Affairs, may determine that adverse material may be placed in her military personnel file. AR 1410. Plaintiff submitted a statement with her acknowledgement, denying adultery and stating that the initial accuser was "untrustworthy, unfaithful, and vindictive." AR 1411.

On August 29, 2017, the Second (II) Marine Expeditionary Force Commanding General directed a Board of Inquiry after having reviewed the Report of Misconduct and finding "sufficient

information" to refer the matter to a Board of Inquiry. AR 1392-1394.  Plaintiff was notified of the Board of Inquiry, the basis of the Board, and her rights therein, on September 10, 2017, with her acknowledging the notice on September 11, 2017. AR 1395-1400.

Prior to the Board of Inquiry, the Government Recorder turned over their evidence for the hearing to Plaintiff's counsel, which included phone records provided near in time to the Board of Inquiry. AR 220-223. The joint Board of Inquiry of Plaintiff and Captain Burnett took place on December 4, 2017. AR 0203-0349. Boards of Inquiry were governed (at the time) by Secretary of the Navy Instruction 1920.6C, and the Military Rules of Evidence do not apply at Boards of Inquiry, nor is there a formal discovery process governed by the Rules of Evidence. *See* SECNAVINST 1920.6C at Enclosure 8.[1] At the Board of Inquiry, matters regarding the timeliness of the evidence provided, as well as Plaintiff's right not to testify under oath, were addressed. AR 0203-0349.

The initial findings worksheet from the Board of Inquiry, dated December 4, 2017, determined by a majority vote that Plaintiff did not demonstrate substandard performance of duty, but did commit misconduct by violating Articles 133 (Conduct Unbecoming an Officer) and 134 (Adultery)  of the Uniform Code of Military Justice (UCMJ), and recommended that she be separated from the Naval service with a General (Under Honorable Conditions) characterization

---

[1] Plainly stated in 1920.6C, page 9 of enclosure 8:
- Hearings by BOIs must be conducted in a fair and impartial manner to ensure the respondents have the opportunity to present their case. At the discretion of the convening authority, a BOI may be convened to hear the cases of multiple respondents.
- BOIs are not courts-martial and the rules of evidence do not apply
- Oral or written matter not admissible in a court of law may be accepted by BOIs.
- Oral or written matter presented may be subject to reasonable restrictions as to authenticity, relevance, materiality, and competency as determined by the BOI.

of service with the separation suspended for a period of 12 months. AR 1271-1273. On December 6, 2017, the Board of Inquiry issued a subsequent and clarifying findings worksheet, determining that Plaintiff did not demonstrate substandard performance of duty, that she did commit misconduct by violating Article 133 and Article 134 of the UCMJ, and they recommended that separation from the Naval service was not warranted. AR 547-548, AR 1274-1275. A minority report from the Senior Member recommended that Plaintiff be separated from the Naval service with a General (Under Honorable Conditions) characterization of service based on her misconduct; he based his recommendation on three facts: first, the behavior of texting between Captain's Del Castillo and Burnett, second, the Bachelor Officers Quarters receipt and text messages about meeting there on December 23, 2015, and, third, phone conversation where Mr. Del Castillo stated his wife, Plaintiff, had admitted to him that she has been unfaithful. AR 545-546, 1276-1277.

The Report of Board of Inquiry, dated January 18, 2018, outlined the procedural history of the Board of Inquiry and indicated that the initial recommendation of the Board of Inquiry to suspend the discharge of Plaintiff was improper, leading to the Board of Inquiry to reconvene on December 6, 2017, and issue a new findings worksheet; the members still found misconduct but recommended that Plaintiff be retained in the Marine Corps. AR 1266-1270. The Report of Board of Inquiry was endorsed on February 28, 2018, by the Second Marine Aircraft Wing Commanding General, who indicated his concurrence "with the Board's findings that substantiate misconduct," but not concurring "with the Board's recommendation that Captain Del Castillo be retained." AR 1265. The Report was served on Plaintiff's counsel, who responded on March 1, 2018, alleging Plaintiff did not receive a "fair board" as required by regulation, that the Board of Inquiry considered unauthenticated and unreliable evidence, the Recorder failed to present any evidence of adultery, the Recorder's actions undermined the findings of the board, and Plaintiff's character

- 5 -

supports a finding of no basis. AR 1282-1301. The Commanding General of the Second (II) Marine Expeditionary Force endorsed the Report of Board of Inquiry on April 24, 2018, specifically addressing the deficiencies alleged by Plaintiff's counsel regarding the Board of Inquiry, determining the alleged deficiencies were without merit, and ultimately concurred with the Board's finding to substantiate misconduct but not concurring with the recommendation that Plaintiff be retained. AR 1262-1263.

After review, the Deputy Commandant for Manpower and Reserve Affairs closed Plaintiff's case on August 17, 2018, directing that adverse material concerning the matter be placed in her Official Military Personnel File. AR 1261.  Plaintiff received an adverse fitness report for the period of June 1 through September 12, 2019, based on adverse material being placed in her personnel file on September 9, 2019. AR 1088-1095.

## II.    Plaintiff's BCNR Application and the BCNR's Decision

In an application dated  May 3, 2020, Plaintiff petitioned BCNR seeking "to remove a failure to select for promotion, two adverse fitness reports and all other records of adverse personnel action taken after an arbitrary and capricious [Board of Inquiry] that was held on [December 4, 2017]-the various bases for seeking relief from this adverse personnel action will be outlined in the attached letter by my Counsel of Record, John B. Gately, dated [April 30, 2020]- hereby incorporated by reference." AR 34-35.  Mr. Gately's April 30, 2020, letter outlined the basis for relief requested, specifically, indicating that the "[Board of Inquiry] did not afford the Petitioner a full and impartial hearing as contemplated by Paragraphs One and Ten of Enclosure Five due to improper actions by the Recorder and the admission of unauthenticated, uncorroborated and inherently unreliable evidence as outlined by Counsel for the Respondent in Enclosure Six." AR 0036-48.

The BCNR issued a decision in response to Plaintiff's application on March 21, 2021. AR 0001-0003. This is the decision challenged by Plaintiff in the above-captioned matter.  In support of its decision, the BCNR obtained advisory opinions from Headquarters Marine Corps Military Personnel Law Branch  and the Marine Corps Performance Evaluation Review Board. AR 0001-0003, 0027-0033, 0510-0511, 1016-1022.

On August 16, 2020, Headquarters Marine Corps Military Personnel Law Branch issued an advisory opinion addressing Plaintiff's request to remove a failure of promotion selection, an adverse fitness report, and any other records of adverse personnel action taken after the joint Board of Inquiry substantiated misconduct from her personnel file. AR 0027-0033. The opinion addressed matters raised by Plaintiff, recommending against relief, and specifically addressed the evidence presented and substantiating misconduct at the Board of Inquiry, the text and phone records considered by the Board of Inquiry, the Plaintiff's unsworn statement, the standard of evidence and inapplicability of the Military Rules of Evidence at a Board of Inquiry, and new phone records provided by Plaintiff after the Board of Inquiry. AR 0027-0033. The advisory opinion ultimately concluded that "for the reasons stated, Applicant has not provided substantial evidence demonstrating the existence of a probable material error or injustice warranting removal of the materials at issue. The Board should deny the petition." AR 0033.  Plaintiff responded to the Headquarters Marine Corps Military Personnel Law Branch advisory opinion on September 26, 2020, disagreeing with opinion and requesting that relief be granted in favor of Plaintiff based on good cause shown. AR 0012-0018.

On November 20, 2020, the Marine Corps Performance Review Board issued a memorandum referencing the July 15, 2020, advisory opinion relating to Plaintiff's petition, and indicating "the majority opinion of the three members of the [Marine Corps Performance Review

Board] was that the petition did not demonstrate probable material error, substantive inaccuracy, or injustice warranting removal of the fitness report in accordance with reference (b) [Marine Corps Order 1610.7A]." AR 0510-11, 1016-1022. In the July 2020 opinion, the Marine Corps Performance Review Board addressed all matters raised by Plaintiff, specifically indicating that she was essentially re-litigating the validity of the Board of Inquiry process and findings, which largely exceeds the mandate of the Performance Evaluation Review Board . AR 1017.

The BCNR decision considered all matters submitted and raised by Plaintiff, as well as the advisory opinions from Headquarters Marine Corps Military Personnel Law Branch and the Marine Corps Performance Review Board and Plaintiff's rebuttal, ultimately finding "the evidence submitted insufficient to establish the existence of probable material error or injustice." AR 0001-0003. In their decision, the BCNR specifically addressed Plaintiff's contentions regarding her fitness reports, failure for selection for promotion, and issues alleged with the Board of Inquiry. AR 0001-0003. The BCNR outlined, in detail, its reasoning that relief was not warranted, addressing the allegation challenging her right not to testify under oath, the recorder's actions at the Board of Inquiry, the evidence substantiating misconduct at the Board of Inquiry, the timeliness of evidence presented, parameters and rules (including the inapplicability of the Military Rules of Evidence) governing a Board of Inquiry, authentication of phone records, matters raised regarding her fitness reports, and all other matters raised in her application for relief. AR 0001-0003.

### III.  **Procedural History**

On June 13, 2025, Plaintiff initiated the above-captioned civil action.  Compl. (ECF No. 1).  Plaintiff asserted a single cause of action under the APA.  *Id.* ¶¶ 39-42.  Plaintiff alleges that the Board "improperly concluded that Major Del Castillo did not disprove the government's evidence" and therefore improperly determined that there "was no error or injustice in the Board of Inquiry's decision to admit unauthenticated cell phone records." *Id.* ¶ 40.  She alleges further

that the Board "improperly found that there was no error or injustice in the Recorder's comments about Major Del Castillo's decision not to testify or the Recorder's last-minute provision of evidence." *Id.* ¶ 41. Finally, she alleges that the Board "improperly determined that the Board of Inquiry properly weighed the evidence to render a fair decision, despite the lack of any direct evidence." *Id.* ¶ 42.

Plaintiff asks the Court to find that the Board's decision was unlawful, enter judgment in favor of Plaintiff, vacate the Board's decision, and remand the matter back to the Board. *Id.* at Request for Relief.

**LEGAL STANDARDS**

## I. <u>Summary Judgment</u>

When a party seeks review of agency action under the APA "[t]he entire case on review is a question of law," and can be resolved on the administrative record in the context of a motion for summary judgment. *Atl. Sea Island Grp. LLC v. Connaughton*, 592 F. Supp. 2d 1, 12-13 (D.D.C. 2008). In such record review cases, a district court generally does not resolve factual issues or duplicate agency fact-finding efforts, but instead functions as an appellate court addressing legal issues. *See James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996). For this reason, the normal standard of review for a summary judgment motion, which requires a district court to decide whether there is any "genuine issue of material fact," does not apply. *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89-90 (D.D.C. 2006); *see* LCvR 7(h)(2) (statement of undisputed material facts not required for cases "in which judicial review is based solely on the administrative record"). A motion for summary judgment on an APA claim is, in short, a mechanism for a court to decide whether, as a matter of law, the agency action under review is supported by the administrative record and is otherwise consistent with the APA standard of review. *See e.g., Se. Conf. v. Vilsack*, 684 F. Supp. 2d 135, 142 (D.D.C. 2010).

A court may set aside an agency action only if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001). Under the APA,

> An agency action may be arbitrary and capricious if the agency (1) relied on factors which Congress did not intend it to consider; (2) entirely failed to consider an important aspect of the problem; or (3) offered an explanation for its decision that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or agency expertise.

*Escobedo v. Green*, 602 F. Supp. 2d 244, 248 (D.D.C 2009) (citing *Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "As the Supreme Court has explained, "the scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment for that of the agency." *Id.*; *see also Hardy v. McHugh*, 692 F. Supp. 2d 76, 80 (D.D.C. 2010) (disposing of a soldier's APA claim where the plaintiff asked this court to substitute its judgment for that of the Army board).

In reviewing agency action under the APA's arbitrary and capricious standard, a court "will not disturb the decision of an agency that has 'examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *MD Pharm., Inc. v. DEA*, 133 F.3d 8, 16 (D.C. Cir. 1998) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43); *Escobedo*, 602 F. Supp. 2d at 248 (a decision by the Army's military review board is not arbitrary or capricious if the decision "minimally contains a rational connection between the facts found and the choice made"). A reviewing court will 'uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned.'" *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995) (citation omitted).

## II.    <u>Increased Deference When Reviewing Decisions of Correction Boards</u>

The Secretary of the Navy may act through a civilian board to correct any Navy record when he "considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1).

Within the context of challenges to military correction board decisions regarding issues requiring military expertise—like personnel decisions—courts must review those decisions "under an 'unusually deferential application of the arbitrary or capricious standard' of the APA." *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000); *Kreis v. Sec'y of Air Force*, 406 F.3d 684, 686 (D.C. Cir. 2005); *see also Escobedo*, 602 F. Supp. 2d at 248 ("Military boards are entitled to even greater deference than civilian administrative agencies."). This substantial deference "is calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with [a military personnel action or decision], a result that would destabilize military command and take the judiciary far afield of its area of competence." *Escobedo*, 602 F. Supp. 2d at 248-49 (quoting *Cone*, 223 F.3d at 793). Indeed, "even if a board could have explained its reasons . . . in more detail, an agency's decision [need not] be a model of analytic precision to survive a challenge." *Roberts v. United States*, 883 F. Supp. 2d 56, 69 (D.D.C. 2012) (citations omitted).  Review of issues not requiring military judgment, like the Board's application of a procedural regulation governing its case adjudication process, are reviewed under a more typical arbitrary and capricious standard.  *Kreis*, 406 F.3d at 686.

## ARGUMENT

### I.    The BCNR Fully Explained Its Finding of No Error or Injustice and Provided a Rationale Connection Between the Facts and Its Decisions

Defendant is entitled to summary judgement because the BCNR's decision explains why the Board of Inquiry's decision was not in error or unjust.  There is no dispute that the BCNR "is not an investigative body." 32 C.F.R. § 723.2(b). The BCNR relies on a presumption of regularity to support the official actions of public officers, and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties. 32 C.F.R. § 723.3(e)(2). Applicants such as Del Castillo have the burden of overcoming this presumption by

producing substantial evidence demonstrating the existence of a probable material error or injustice. *Id*. ("The Board may deny an application in executive session if it determines that the evidence of record fails to demonstrate the existence of probable material error or injustice. The Board relies on a presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties. Applicants have the burden of overcoming this presumption but the Board will not deny an application solely because the record was made by or at the direction of the President or the Secretary in connection with proceedings other than proceedings of a board for the correction of military or naval records. Denial of an application on the grounds of insufficient evidence to demonstrate the existence of probable material error or injustice is final subject to the provisions for reconsideration contained in § 723.9.") Del Castillo did not satisfy this burden, and the BCNR correctly held that Del Castillo's petition should be denied.  The BCNR's decision is the subject of review, not the Board of Inquiry, and this Court should not disturb those findings.

Plaintiff was accused of engaging in an adulterous relationship with another Marine captain.  AR 0005.  After a hearing before a Board of Inquiry, the board found that Plaintiff committed conduct unbecoming an officer and adultery, in violation of Articles 133 (conduct unbecoming) and 134 (adultery) of the Uniform Code of Military Justice.  *Id.*  However, a majority of the board voted to retain Plaintiff.  *Id.*  Plaintiff's application to the BNCR argued that the Board of Inquiry did not give her a full and impartial hearing because (a) the Recorder (the government's advocate) made improper statements to the board and (b) unauthenticated, uncorroborated and inherently unreliable evidence was admitted.  AR 0005; AR 0034-48.  Plaintiff argued further that the Board of Inquiry was not conducted by procedural and substantive due process requirements,

and both the convening authority and the final agency approval authority erred in approving its recommendations, and that the actions of the Board of Inquiry were arbitrary and capricious. *Id.* Specifically, Plaintiff claimed that the Recorder improperly authenticated phone records entered into evidence, that the Recorder failed to present evidence of adultery, and that the Recorder's comments regarding Plaintiff's failure to testify under oath undermined the Board of Inquiry's findings. *Id.* Plaintiff requested that the BNCR correct Plaintiff's records to remove all records related to the Board of Inquiry proceedings, as well as all adverse personnel actions stemming from those proceedings. AR 0047.

A panel of the BNCR reviewed Plaintiff's application and supporting materials, relevant portions of Plaintiff's naval record, applicable statutes, regulations, and policies as well as advisory opinions from Headquarters Marine Corps Military Personnel Law Branch and the Marine Corps Performance Evaluation Review Board, and Plaintiff's rebuttal thereto. AR 0001. In its decision, the BNCR found that the Board of Inquiry had addressed each of Plaintiff's allegations at the time. AR 0002. Specifically, a member of the panel determined that the Recorder's authentication of phone records did not invalidate the Board of Inquiry because the Military Rules of Evidence do not apply in that forum, and that the Board of Inquiry had sufficient evidence to find adultery when considered in the light most favorable to the government. *Id.* The panel also found that the Recorder's actions do not provide a basis for overturning the Board of Inquiry's findings because the board allowed arguments and even sustained Plaintiff's counsel's objection to improper references to her right to remain silent. *Id.*

The BNCR further voiced its concurrence with the advisory opinion of the Headquarters Marine Corps Military Personnel Law Branch in its finding that Plaintiff had not provided evidence demonstrating the existence of a probable material error or substantive injustice

- 13 -

warranting removal of the requested materials from her file.  AR 0002.  Specifically, the BNCR determined that the record contains no evidence that the members of the Board of Inquiry improperly considered Plaintiff's decision not to testify and that the production of documents by the Recorder was neither untimely nor did the timeliness of the evidence create material error or injustice.  *Id.*  In addition, regarding authentication of the records purporting to be from the cell phone of the officer with whom Plaintiff allegedly committed adultery, the BNCR noted that the Board of Inquiry clearly understood that they could challenge the cell phone records' authenticity during their deliberations, and that, although not required, the Board of Inquiry members determined that they had significant evidence to corroborate the authenticity of the most relevant portions of the text messages.  *Id.*  The BNCR also addressed records from Plaintiff's cell phone, which she had provided after the Board of Inquiry adjourned, finding that they did not disprove the evidence offered by the government.  *Id.*  As a result, the BNCR determined that Plaintiff failed to demonstrate that the Board of Inquiry members did not properly weigh the evidence before them or that the Board of Inquiry's decision to admit unauthenticated cell phone records was in error or unjust.  *Id.*

Ultimately, applying the presumption of regularity and noting that the Board of Inquiry requires only a preponderance of the evidence to substantiate allegations, the BNCR determined the Board of Inquiry properly analyzed the evidence in front of it, to include all circumstantial evidence, determined its weight and credibility, and rendered a fair decision—the additional evidence provided by Plaintiff to the BNCR notwithstanding.  AR 0003.  The BNCR further noted its concurrence with the advisory opinion from the Marine Corps Performance Evaluation Review Board that Plaintiff had not met the burden of proof, nor shown by preponderance of evidence probable material error, substantive inaccuracy, or injustice regarding the fitness reports Plaintiff

sought to remove from her record. *Id.* The Board therefore concluded that removal of the fitness reports and failures of selection was not warranted. *Id.*

The BNCR's decision in this case relates to military personnel decisions and should be afforded substantial deference. *Escobedo*, 602 F. Supp. 2d at 248; *Kreis*, 406 F.3d at 686. As demonstrated by the BNCR's written decision, it considered all of the arguments raised by Plaintiff—the admissibility and reliability of the phone records sponsored by the government, the statements by the Recorder, and the allegedly contradictory phone records provided by Plaintiff— and determined that Plaintiff had not met her burden of demonstrating by substantial evidence that the Board of Inquiry's decision was in error or unjust. AR 0001-3. This decision, which relied on a presumption that the Board of Inquiry proceedings occurred in a regular manner, 32 C.F.R. § 723.3(e)(2), more than withstands scrutiny under the substantial deference standard. *See Roberts v. United States,* 883 F. Supp. 2d at 70 (granting judgment for the government where the Board offered a reasoned basis for its decision). The reasoned basis for the BNCR's decision is further bolstered by the analysis in the advisory opinions reviewed by the board and addressed in its decision. AR 0001-3; AR 0027-33 (Headquarters Marine Corps Military Personnel Law Branch opinion); AR 1016–22 (Performance Evaluation Review Board opinion).

As discussed below, Plaintiff's critiques of the BNCR decision are ultimately attempts to obtain *de novo* review of the materials presented to the Board of Inquiry (supplemented by the phone records that Plaintiff did not present until the BNCR review). But the BNCR is not an investigative body, 32 C.F.R. § 723.2(b), and this Court's review of its decision does not extend to a re-evaluation of the evidence reviewed by the Board of Inquiry. As noted by the BNCR and at least one of the advisory opinions that it reviewed, though it was indeed circumstantial evidence, more evidence than just the questioned phone records was presented to the Board of Inquiry in

- 15 -

support of the allegations against Plaintiff, and she did not effectively rebut that evidence at the Board of Inquiry.  AR 0002; AR 0031.  Neither the BNCR nor this tribunal provide Plaintiff with an opportunity for a second bite at that apple.  The BNCR offered a reasoned basis for its decision and that decision is entitled to substantial deference under the law of this Circuit.  Judgment should be entered in favor of Defendant as to Plaintiff's claims.

## II.    Plaintiff Has Not Demonstrated That the BNCR Was Arbitrary or Capricious in Its Decision to Deny Plaintiff's Application

Plaintiff's motion for summary judgment does not demonstrate that Plaintiff met her burden before the BNCR of producing substantial evidence demonstrating the existence of a probable material error or injustice.  Instead, Plaintiff rehashes arguments that she made before the BNCR and which the BNCR addressed in the challenged decision.  Ultimately, though Plaintiff takes issue with certain pieces of evidence considered by the BNCR and statements made by the Recorder, she has not put forth substantial evidence that the BNCR erred or issued an unjust decision.  Therefore, Plaintiff's motion should be denied.

### A.    The BNCR Did Not Ignore Evidence That The Text Messages Might Have Been Fabricated

Plaintiff's first argument against the BNCR decision is that it was arbitrary and capricious for the board to determine that the Sprint phone records provided by Plaintiff did not demonstrate that the phone records provided by Major Burnett's wife and which the Records presented as evidence at the Board of Inquiry hearing had been fabricated.  Pl's Mot. (ECF No. 12) at 24.  This argument does not demonstrate that Plaintiff had provided substantial evidence of error in her application to the BNCR and, therefore, it does not demonstrate that the BNCR was arbitrary and capricious.

First, the BNCR did consider the Sprint phone records provided by Plaintiff.  The BNCR's decision states:

Next, the Board noted that your counsel objected to the authenticity of the cell phone records. The Board also noted that that the BOI clearly understood that they could challenge the cell phone records' authenticity during their deliberations. Ultimately, although not required, the BOI members determined that they had significant evidence to corroborate the authenticity of the most relevant portions of the text messages. The Board determined that your own cell phone records, produced after the BOI adjourned, do not disprove the evidence offered by the government. The Board thus determined that you failed to demonstrate that the BOI members failed to properly weigh the evidence before them or that the BOI's decision to admit unauthenticated cell phone records was in error or unjust.

AR 0002.  The BNCR's treatment of Plaintiff's argument regarding the relevance of the phone records she belatedly provided to rebut the government's evidence, far from being arbitrary and capricious, demonstrates that the BNCR acted properly in its role of reviewing the Board of Inquiry's actions rather than acting as a *de novo* fact finder (which it was not).

In addition, as both the BNCR and Headquarters Marine Corps Military Personnel Law Branch advisory opinion noted, there was nothing unjust about the Board of Inquiry admitting unauthenticated cell phone records, as the Military Rules of Evidence did not apply and it was permitted to consider matters that would not be admissible at a court-martial.  AR 0002; AR 0029. Finally, Plaintiff's focus on the authenticity and accuracy of the cell phone records that the Recorder received from Captain Burnett's wife and offered as evidence misses the fact that the Board of Inquiry's decision (and the BNCR's upholding thereof) was based on additional evidence, and that the Board of Inquiry found that a preponderance of that evidence supported the government's allegations against Plaintiff.   AR 0002.

### B.    The BNCR Did Not Fail To Address Evidence Demonstrating That The Recorder's Actions May Have Undermined the Board of Inquiry Proceedings

Plaintiff's second set of arguments against the BNCR decision is that it was arbitrary and capricious for the board not to consider the impact of (a) the government only providing the cell phone records to Plaintiff the night before the Board of Inquiry, (b) the Recorder's allegedly

- 17 -

improper attempt to authenticate the cell phone records, and (c) the Recorder commenting on Plaintiff's failure to testify under oath during the proceedings.  Pl's Mot. (ECF No. 12) at 22. These arguments each lacks merit.

### 1.    Timing of Provision of Cell Phone Records

The BNCR's treatment of the late provision of the government's cell phone records evidence to Plaintiff was not arbitrary and capricious.  In reaching its decision that Plaintiff had not presented substantial evidence of error or injustice by the Board of Inquiry, the BNCR noted that the board "determined that the production of documents by the Recorder was neither untimely nor did the timeliness of the evidence create material error or injustice."  AR 0002.  In light of the presumption of regularity applied by the BNCR, it was not required to further probe the Board of Inquiry's response to Plaintiff's timeliness objection.  Moreover, the Headquarters Marine Corps Military Personnel Law Branch advisory opinion addressed the issue, stating:

> While Applicant argues that the Recorder should have produced the documents earlier, she does not claim that she had insufficient time to prepare a defense. Neither respondent requested a continuance during the board; they merely complained that the production was untimely and the BOI should refuse to consider the documents. Unlike courts-martial, BOI's do not impose any discovery timelines on parties.

AR 0030.  In light of the analysis included in the advisory opinion and the presumption of regularity, Plaintiff's timeliness argument does not demonstrate that the BNCR's decision was arbitrary or capricious.

### 2.    Alleged Improper Authentication Of Records

The BNCR's treatment of the Recorders alleged improper attempt to vouch for the authenticity of the Burnett cell phone records was not arbitrary and capricious.  Though the BNCR did not directly address the vouching argument in its decision, as discussed, it did review the Board of Inquiry's treatment of the cell phone records and observe that the Military Rules of Evidence

did not apply. AR 0002. Plaintiff's motion emphasizes the role that the cell phone records played in the minority opinion issued by a member of the Board of Inquiry who would have voted to separate Plaintiff from the Navy (whereas the majority of the board voted to retain her). Pl's Mot. (ECF No. 12) at 25 (citing AR 0055). This argument is a red herring. First, it references the minority decision, not the majority decision that the BNCR upheld. Second, the minority opinion cited additional evidence in support of its position regarding Plaintiff. AR 0055 ("I base my findings on three distinct facts, (1) the behavior of texting between Captain's Del Castillo and Burnett , (2) the BOQ receipt and text messages about meeting there on 23 December, and (3) phone conversation where Mr. Del Castillo stated that his wife, Captain Del Castillo, had admitted to him that she has been unfaithful."). Finally, as discussed above, the majority opinion cited evidence other than the disputed phone records in support of its finding that a preponderance of the evidence supported the allegations of adultery and both the BNCR decision and the referenced advisory opinions addressed this additional evidence. Thus, the BNCR's treatment of Plaintiff's dispute regarding the Recorder's alleged improper authentication of the disputed phone records was not arbitrary and capricious.

> 3.    Comments Regarding Plaintiff's Decision Not to Testify

Plaintiff also argues that the BNCR failed to address the prejudicial impact of the Recorder's comments regarding Plaintiff's failure to testify under oath. Pl's Mot. (ECF No. 12) at 27. This argument also lacks merit.

The BNCR, in reviewing the Board of Inquiry's actions under a presumption of regularity, noted that the Commanding General, Second (II) Marine Expeditionary Force "found that the Recorder's actions do not provide a basis for overturning the [Board of Inquiry's] findings because the [Board of Inquiry] allowed arguments and even sustained [Plaintiff's] counsel's objection to improper references to [Plaintiff's] right to remain silent." AR 0002, see AR 319-321.    The

- 19 -

Headquarters Marine Corps Military Personnel Law Branch advisory opinion also considered the argument and found that the record contained no evidence that the Board of Inquiry members improperly considered Plaintiff's decision not to testify.  AR 0030.

More broadly, however, the Recorder's statement was less an improper challenge to Plaintiff's assertion of her rights than it was an argument about Plaintiff's failure to rebut the evidence presented against her.  As part of the Board of Inquiry, the government had to demonstrate by a preponderance of the evidence that the allegations against Plaintiff were substantiated.[2]  Testifying under oath was not the only way that Plaintiff could have rebutted the evidence presented against her but, having failed to otherwise rebut that evidence, it was not improper for the government's advocate to note that Plaintiff had not provided sworn testimony altering the balance of the evidence.

### III.    Plaintiff's Argument Regarding "Ambush Discovery" Is Misplaced

The final section of Plaintiff's motion for summary judgment addresses the BNCR's alleged failure to consider the prejudicial effect of the government only providing the Burnett phone records to Plaintiff's counsel the evening prior the Board of Inquiry (i.e. "Ambush Discovery").  Pl's Mot. (ECF No. 12) at 33-36.  This argument is misplaced, and the absence of a discussion about this issue in the BNCR's decision does not demonstrate that it was arbitrary and capricious in determining that Plaintiff had not provided substantial evidence of error or injustice. Further, the presumption of regularity applies, and the matter was addressed on the record at the

---

[2]    *See* SECNAVINST 1920.6C, Enclosure (8), Board of Inquiry Procedures, 11. Decision of the BOI: "a. A finding on each of the reasons for separation specified (note: where a reason for separation is based on an approved finding of guilty by a court-martial or a civilian criminal conviction, such a finding of guilty or criminal conviction shall be binding on the BOI; however, in all other cases, a finding on a reason for separation shall be based on a preponderance of the evidence) and one of the following…"

Board of Inquiry, as well as the Report of Board of Inquiry, the Headquarters Marine Corps Military Personnel Law Branch advisory opinion advisory opinions, and the BCNR decision itself –illustrating BCNR considered the matter raised by Plaintiff and the record provides a reasoned basis for their decision to deny relief. *See* AR 0002, 0061, 0220-24.

As discussed, the Military Rules of Evidence do not apply to the Board of Inquiry proceedings and there is no formal discovery process.[3]  Moreover, Plaintiff's counsel could have asked to continue the hearing when the government provided the evidence, but she chose not to. AR 0551. Plaintiff thus waived any argument of prejudice stemming from the inability to review the records prior to the hearing.  This critique is not a basis for finding that the BNCR's decision was arbitrary and capricious.

*    *    *

---

[3]      *See* SECNAVINST 1920.6C, Enclosure (8), Board of Inquiry Procedures, 11. Hearing: "a. BOIs are not courts-martial and the rules of evidence do not apply."

- 21 -

## CONCLUSION

For the reasons stated herein, Del Castillo's motion for summary judgment should be denied and judgment should be entered in favor of Defendant.

Dated: March 16, 2026                    Respectfully submitted,

                                         JEANINE FERRIS PIRRO
                                         United States Attorney

                                         By: _____/s/ Sian Jones_____
                                             SIAN JONES, D.C. Bar # 1024062
                                             Assistant United States Attorney
                                             601 D Street, NW
                                             Washington, DC 20530
                                             (202) 252-2578

                                         *Attorneys for the United States of America*

- 22 -